## UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA

In re: KEVLEENA S. WEBB,                                    Bankruptcy Case No. 20-30776

Debtor

Afrikka L. Ennis and Lavaniel D. Ennis Jr.

Plaintiff,

v.

KEVLEENA S. WEBB,                                          Exhibits for Objection to Confirmation

Defendant

NOTICE

Plaintiffs Afrikka L. Ennis and LaVaniel D. Ennis hereby submit and request appropriate filing of the attached exhibits in support of filed objection to confirmation. Hearing in this matter is currently scheduled for Jiune 3,2020.

_Afrikka Ennis_    5/19/2020

AFRIKKA L. ENNIS, PLAINTIFF

_Lavaniel Ennis_    5/18/20

LAVANIEL D. ENNIS JR., PLAINTIFF

20-30776

## CREDITOR (ENNIS) TIMELINE of EVENTS

**07/29/14-** K Webb signs lease for property 7118 West Rd, Chesterfield, VA  owned by (A and L **Ennis Jr.**) (Section 8 tenant responsible for any amounts over what agency paid. Lessee was responsible for paying approx. $370-$425 for all but 2 months of her tenancy)

**08/2018-** Lessee (K Webb) was notified by property management company that property owners (Ennis) wished her to vacate property at 7118 West Rd, NLT 10/31/18 due to habitual late payments by K Webb

**11/10/18-** Lessee K Webb Vacates 7118 property/walk through conducted by property owners (A.L. and L.D. Ennis) and property manager (Candice Bolt, RVA Rentals), K Webb did not show up for walk through as agreed, during walk through extensive damage to property was noted and photographic evidence gathered at that time

**01/10/2019-** Property owners (Ennis) File Warrant in Debt based upon extent of damage caused by former tenant (K. Webb) and cost to return property to habitable state

**04/04/19-** Court hearing on Warrant in Debt case number GV18024042-01 (plaintiffs, A.L. and L.D. Ennis awarded $11524.00 of $13,738.73 sued for)

**04/24/2019-** Hearing on Motion requesting a rehearing of case @ K. Webb request. Judge denies motion upholding previous decision

**04/27/2019-** Garnishment summons filed to begin collecting under judgement awarded in case GV18024042-01. (plaintiffs, Ennis) notified that they unable to collect due to bankruptcy filed 06/2017 by debtor K. Webb, unbeknownst to plaintiffs, which did violate provision in lease requiring notification to property management company of any bankruptcy filing while a lessee.

**05/29/2019-** Bankruptcy 17-0776 motion to dismiss filed on behalf of K Webb

**06/15/2019-** New Chapter 13 bankruptcy 19-33315 filed

 **08/31/2019-** Adversary Preceding, Motion Objecting to Dischargeability of Debt, (19-03076) filed by creditors (Ennis)

**09/15/19-** Case dismissal, of Bankruptcy plan, (19-33315) requested by Trustee due to non-adherence to plan by K. Webb

**10/10/2019-** Bankruptcy (19-33315) case ordered dismissed by Judge Phillips

**10/28/2019-** Creditors(Ennis) withdraw Adversary complaint (19-03076) due to dismissal of bankruptcy (19-33315) removing the underlying basis on which complaint had been filed.

**11/05/2019-** 2nd Garnishment summons served on judgment in case GV18024042-02 against debtor Webb, by creditors(Ennis)

**01/31/2020-** First garnishment sent to Chesterfield County Court toward judgement, for creditors (Ennis)

1

20-30776

# CREDITOR (ENNIS) TIMELINE of EVENTS

**02/14/2020**- New Chapter 13 bankruptcy (20-30776) filed by debtor (K Webb). (despite having been required to complete 2 financial management courses under previous bankruptcy filings, number of creditors, debtor K Webb is seeking relief from increases from 24 to 38 a 58% increase in 8 months.)

**4/30/2020**- Motion to dismiss (20-30776) filed by Trustee, due to failure of debtor (K Webb) to make first payment according to plan.

| General Contractor Labor (B. Gainey, Williams) | Cost | Outside Contractor Labor | Cost | Material purchased by Homeowner | Cost | Rent monies | Amount |
|---|---|---|---|---|---|---|---|
| Labor for Painting (walls, doors, trim, repair) | $2,700.00 | Carpet replacement/installation (J.KM) | $2,851.36 | See Actuals (sheet 2) | $2,284.43 | Nov 1-10 (prorated rent) | $566.67 |
| Labor for Painting (Ceiling) | $500.00 | Kitchen floor replacement(material) | $444.00 | | | Rent loss due to damages | $1,700.00 |
| Labor to replace upstairs vanity tops/plumbing | $300.00 | Kitchen floor replacement (install) +$55 move fridge | $239.00 | | | Late fee for September | $78.60 |
| Labor for Cabinet Rehab/bottom replacement | $1,200.00 | Hall bath floor replacement material @ 70 sq ft | $94.50 | | | Late fee for October | $78.60 |
| Kitchen floor removal/clean up | $300.00 | Hall bath floor replacement (Install) +$40 move toilet | $144.50 | | | | |
| Kids bedroom tier removal/install | $75.00 | Toilet repairs (warranty fee) | $200.00 | | | | |
| Whole House cleaning | $300.00 | Dishwasher warranty call (unable to repair) | $100.00 | | | | |
| Carpet removal | $125.00 | Screen Repair | $50.00 | | | | |
| Misc repairs | $300.00 | Screen replacement | $90.00 | | | | |
| Material purchase reimbursement (see sheet 2) | $750.00 | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | Subtotal | $2,284.43 | | |
| | | | | | Plus VA tax rate of 5.3% | $121.07 | | |
| Total | $6,950.00 | Total | $4,213.36 | Total | $2,405.50 | Total | $2,419.87 |
| | | | | | | | |
| | | Final Total | $15,388.73 | | | | |
| Costs associated with rehab from tenant damage | | Minus Deposit | $1,650.00 | | | | |
| to 7138 West Rd, Chesterfield, VA 23832 | | Owed by Tenant | $13,738.73 | | | | |

ACTUAL COSTS TO HOMEOWNER

$13,738.73 Costs minus dep assessed to K. Webb

$7,705.00 Costs not assessed to tenant

$6,500.00 Mortgage carry costs

$27,943.73 TOTAL

| Material purchased by Homeowner | Cost | ACTUAL COSTS (SHEET 2) Contractor material purchases (reimbursed) | Cost | |
|---|---|---|---|---|
| Paint 12/22/18 12:54 | $44.96 | SW paint 12/08/18 | $120.87 | |
| Master side splash | $20.85 | HD misc 11/24/18 | $32.05 | |
| Exterior door bell replacement | $56.61 | SW paint 11/28/18 | $69.13 | |
| door stoppers (5) | $10.00 | LW misc 12/04/18 | $21.83 | |
| 3 Homewarranty repair calls | $300.00 | SW paint acc 12/08/18 | $26.86 | |
| 3 replacement bath faucets | $82.65 | SW paint acc 12/19/18 | $16.40 | |
| Single vanity replacement (1) | $170.10 | DG misc 12/19/18 | $2.37 | |
| Double vanity replacement (1) | $197.10 | HD kitchen plumb 01/28/19 | $50.43 | |
| Bedroom fan replacement (1) | $40.63 | HD misc 12/29/18 | $132.86 | |
| Interior Doorbell | $14.98 | HD misc 01/03/19 | $25.65 | |
| Vanity side splash (mstr bath) (1) | $22.00 | HD misc cabinet repair 01/04/19 | $29.56 | |
| Vanity side splash (hall bath) (1) | $20.85 | HD misc cabinet repair 01/06/19 | $47.58 | |
| Sliding Screen door (1) | $55.80 | HD misc 01/08/19 | $14.28 | |
| Screen Door handle | $13.98 | HD misc 01/08/19 | $49.83 | |
| Replacement door stoppers (4) | $7.12 | HD misc 01/09/19 | $56.22 | |
| Garage door openers (2) | $55.76 | SW paint acc 01/16/19 | $22.76 | |
| Carbon Monoxide detectors (2) | $71.94 | HD misc 10/27/19 | $19.75 | |
| Toilet paper holder (1) | $8.26 | HD misc 01/27/19 | $13.56 | |
| Paint and Equipment | $804.21 | | | |
| garbage disposal | $100.00 | | | |
| Towel Bar (2) | $19.98 | | | SW (Sherwin Williams) |
| Household trash disposal | $68.00 | | | HD (Home Depot) |
| Bathroom undersink plumbing | $31.03 | | | LW (Lowes) |
| Bathroom replacement faucets (3) | $82.65 | | | acc (accessories) |
| Mailbox Post | $24.98 | | | DG (dollar general) |
| Cement for Post | $9.99 | | | |
| | | | | |
| Sub total | $2,284.43 | | | |
| Plus VA tax rate of 5.3% | 121.07 | | | |
| Total | $2,405.50 | Total | $751.99 | |

| Homeowner purchases | COST |
|---|---|
| Granite countertop | $1,566.72 |
| Replace vinyl flooring | $500.00 |
| Lowes flooring estimate | $35.00 |
| lowes supplies 12/12/18 | $53.96 |
| lowes supplies 12/22/18 12:54 | $87.30 |
| Home Depot Supplies 12/23/18 | $14.43 |
| Lowes supplies 12/20/18 13:56 | $130.67 |
| Appliances | $2,117.45 |
| Bedroom fan replacement (11) (rear) | $40.63 |
| Home Depot Supplies 12/23/18 12:04 | $37.34 |
| Gutter Cleaning | $100.00 |
| door hinges | $91.95 |
| Lowes supplies 12/11/18 | $225.57 |
| lowes replace air filters | $37.95 |
| light fixture | $58.23 |
| lowes supplies 11/26/18 | $106.58 |
| lowes supplies 11/30/18 17:48 | $58.25 |
| Sherwin williams paint sample | $12.50 |
| Lowes supplies 03/02/19 | $34.62 |
| lowes supplies 02/28/19 | $57.86 |
| Home Depot supplies 02/27/19 | $19.67 |
| Floor stain products | $406.34 |
| Kitchen Faucet | $82.99 |
| Closet light replacement | $20.26 |
| Kitchen sink stopper | $10.95 |
| kitchen soap dispenser | $24.99 |
| HD shoe base 1/03/19 | $79.35 |
| Vinyl flooring master bath 127sq @$1.35 | $171.00 |
| vinyl flooring install master 127sq ft @ 85 + $85 to move toilet | $192.95 |
| Total | $6,375.46 |

**COSTS NOT ASSESSED TO TENANT**

| Labor Not charged to tenant | COST |
|---|---|
| Power Wash Local Adam | $130.00 |
| Wood Floor Staining | $1,000.00 |
| Light Fixtures, fan, etc | $200.00 |
| Total | $1,330.00 |

| Contractor purchases | Cost |
|---|---|
| HD Floor polisher 01/11/2019 | $51.45 |
| HD Floor Edger 12/29/18 | $49.11 |
| HD Floor nailer 02/01/19 | $31.57 |
| HD Floor nailer 01/27/2019 | $31.57 |
| LW floor mat 12/20/18 | $18.46 |
| HD misc 12/20/18 | $9.22 |
| HD Misc 12/27/18 | $4.72 |
| HD misc 12/24/18 | $49.89 |
| HD misc 01/01/19 | $7.53 |
| Total | $253.52 |

**Totals not assessed to tenant** $7,705.46

| MONTH | MORTGAGE Costs |
|---|---|
| Jan-19 | $1,625.00 |
| Feb-19 | $1,625.00 |
| Mar-19 | $1,625.00 |
| Apr-19 | $1,625.00 |
|  |  |
| TOTAL | $6,500.00 |

*04/2018  RRHA Inspect notice + Findings* (handwritten)

**RRHA**
Richmond**Redevelopment**
&**Housing**Authority

Housing Choice Voucher Program
Housing Quality Standards Office
918 Chamberlayne Parkway
Richmond, VA 23220
(804)780-3469 FAX 780-3485
inspections@rrha.com

April 25, 2018

**Kevleena Webb**
**7118 West Road**
**Chesterfield, VA 23832**

Dear Participant:

Attached you will find a copy of the inspection report completed on **April 25, 2018**. The inspection revealed that the attached item(s) are in violation of Housing Quality Standards and/or code requirements.

A reinspection has been scheduled for **May 18, 2018** between the hours of 9:00 a.m.–3:00 p.m. If the attached failed items have not been corrected, or if the Inspector cannot gain access, the inspection will fail. Your landlord has also been informed of this failure and the date of the reinspection.

**The tenant is ultimately responsible for ensuring access on the date of the inspection if they have deficiencies/Property Owner or Landlord is ultimately responsible for ensuring access on the date of the reinspection if they have deficiencies.** Access can be provided any adult 18 years of age or older as designated by the Participant. This person must be present to accompany the Inspector. If requested, a 15-minute advance call can be arranged by providing the RRHA Inspections office with the necessary contact information prior to the date of the inspection.

**If the unit fails the reinspection, funds will be deducted from the Housing Authority's portion of the payment, effective the first day of the following month, and the tenant will have the option to be issued a voucher to move if they request to do so.** This is per the RRHA Administrative Plan, the HUD HCVP Guide book, and 24 CFR982.404 (a) (1), (2), and (3). **If the unit fails the reinspection and the Owner/Property Manager desires a third/final inspection, the Inspections office must be contacted in writing upon completion of the repairs to schedule a date for this inspection.** Upon receipt of the request, an inspection will be scheduled as soon as possible. Payments will resume effective the day the unit passes inspection, however there will be delays in processing the payment of one to two payments. If the Owner/Property Manager does not contact our office, the unit will automatically be terminated from the program on the last day of the following month. Please also be aware that per the Housing Assistance Payment (HAP) Contract, abated funds may NOT be recouped from the Participant nor is that amount refundable.

If you have questions regarding specific failed items or to request prior notification of the Inspector's arrival, please contact the Inspections office at (804) 780-3469 between the hours of 8:30 a.m.–5:00 p.m., Monday-Friday or anytime at inspections@rrha.com or by fax at 780-3485.

Sincerely,

*RRHA Inspections Staff*

**NOTE:  ALL HOUSING AUTHORITY EMPLOYEES HAVE PROPER IDENTIFICATION**
cc: Afrikka Ennis
cc: file

.

## HQS INSPECTION DETAILS REPORT FAILED ITEMS ONLY

| | | | |
|---|---|---|---|
| **Tenant Name** | WEBB KEVLEENA | **Unit Code** | 10000144 |
| **Landlord** | ENNIS AFRIKKA | **Unit Address** | 7118 WEST ROAD |
| | | | CHESTERFIELD |
| | | | VA - 23832 |
| **Inspector** | Mahmood Ahmed | | |
| **Inspected Date** | 04/25/2018 | | |
| **Report Run Date** | 04/25/2018 | **Inspection ID** | 55874 |

**Overall Inspection**

| | |
|---|---|
| Type Of Inspection | Annual |
| Primary Status | Fail |

| Area | | Responsibility |
|---|---|---|
| General Health and Safety | | |

| Item | Observations | Responsibility |
|---|---|---|
| Interior Stairs and Common Halls | **Notes:** secure the loose handrail | Owner |

| Area | | Responsibility |
|---|---|---|
| Living Room | | |

| Item | Observations | Responsibility |
|---|---|---|
| Security | **Notes:** repair/replace the damaged front door jamb | Owner |

04/25/2018 05:03:39 PM

*7118 West Rd property mgmt statement*



# RVA
## Rental Properties
*The Key to Renting Your Property*

To Whom It May Concern:

My name is Candice Bolt, I am the owner and property manager of RVA Rental Properties, LLC we have been in business since June of 2014 I am a licensed agent but only practice property management I do not do sales or listings. Our goal is to give our tenants the best possible homes to live in with the best possible experience and to give our landlords the customer service and dedication they deserve from a management company.

Kevleena Webb became a tenant of 7118 West Road Chesterfield, VA 23832, July 29, 2014 and moved out November 2018. At the time of the move in, the house had been professionally cleaned, the walls were freshly painted, ceiling in the kitchen freshly painted and the house was in excellent condition. RRHA inspection the home and other than an electrical outlet that needed repair in the kitchen the house was in perfect condition for move in.

The owner Afrikka Ennis and Levaniel Ennis had a home warranty on the property and per the lease the owners would pay up to three trade fees for the tenant for any repairs on the property. During the time of Kevleenas tenancy the warranty company was called for numerous items including the stove, air conditioner several times, water heater, dryer, garage door and other items, each time regardless of the agreement made between the owners and tenant, Afrikka would pay the trade fee without hesitation.

Afrikka was always quick to make sure maintenance issues were resolved at the property, everything from the outside steps needing repair to the front door being replaced. Afrikka was always conscientious and courteous to her tenants.

Both Afrikka and myself had been in the home numerous times and always complimented the tenant on how well kept the house was. When our management team would go to the property to do walk throughs we were never able to meet with Kevleena but we did meet with her daughters several times, who were always pleasant and would be doing what looked like professional hair coloring and styling.

On several occasions during the tenancy the tenant would make derogatory remarks about the Ennis family getting too much rent for the home and she could have bought the house for what she paid in rent. She mentioned talking to the neighbors about what she was paying in rent and she would let me know they all agreed she was paying too much and she didn't think it was fair. The rent amount was $1,650 and Afrikka did not go up in rent during Kevleenas tenancy, fair market analysis in 2016 for a house that size was $1800 a month.

During her four year tenancy with us, she rarely paid her portion of the rent on time, Afrikka would not charge her late fees more than half the time so she could get caught up on her rent.

Our last walk through inspection was conducted in August before she moved out, I was in the kitchen talking with her daughter while she did someone's hair, there was no mention of a leak in the ceiling of the kitchen and at that time and I saw no signs of any damage.  In January she had discussed with us that she received a notice from the water department that there may be a leak at the property, we told her to call the water department, she said she figured out it was the toilet that was running and she turned it off and it was not an issue and did not mentioned it to us again.  We were incredibly shocked to go to the exit inspection to see water all over the upstairs bathroom floor and significant damage to the kitchen ceiling.

It is my belief the tenant became upset when we were not going to renew her lease, she allowed the toilet to leak onto the bathroom floor causing damage to the kitchen ceiling, the carpet was stained beyond repair with hair dye, the house was in complete disarray so upsetting for my owner after she had been so supportive of this tenant for years. The tenant left garbage through-out the home, left the house incredibly dirty all the carpets were destroyed beyond repair the cabinets under every sink in the home were ruined it was obvious at the exit inspection that there was thousands of dollars worth of damage.

I tried several times to set up an exit inspection with the tenant so she could be present, she tried to get her Aunt to meet me but I needed someone that was on the lease to be there.  We had set up two separate times and she didn't show up for either of them.  I continued to try and accommodate her but it was apparent she was trying to be difficult and did not want to meet us at the home.

Sincerely,

10/9/19

Candice Bolt
RVA Rental Properties, LLC
Licensed in the Commonwealth of Virginia
rentals@rvahomes.com

LAURA SHANNON WACKS
COMMONWEALTH
REGISTRATION NO.
7779113
MY COMM. EXPIRES:
12/31/2022
OF VIRGINIA
NOTARY PUBLIC

Chesterfield County, VA
My commission expires 12/31/2022
Reg Number 7779113

*7118 West Rd Late payments 1/18 - 11/18*

RVA Rental Properties, LLC

1231 Alverser Drive
Midlothian, VA 23113



✱ *Late payments (no 10P.)*

**Period:** 01 Jan 2018-31 Dec 2018



**Owner Statement**

Afrikka & LaVaniel Ennis
8218 Tatterton Trl
Chesterfield. VA 23237

🏠 Properties
**7118 West Road** - 7118
West Road
Chesterfield, VA 23832

| Date | Payee / Payer | Type | Reference | Description | Income | Expense | Balance |
|---|---|---|---|---|---|---|---|
| | | | | Beginning Cash Balance as of 01/01/2018 | | | 25.80 |
| 01/01/2018 | Kevleena Webb | Receipt | | Rent Income | 52.20 | | 78.00 |
| 01/05/2018 | Kevleena Webb | Receipt | 7362 | Rent Income - January 2018 | 368.80 | | 446.80 |
| 01/05/2018 | Kevleena Webb | Receipt | 7362 | Rent Income | 9.10 | | 455.90 |
| 01/05/2018 | Kevleena Webb | Receipt | 7362 | ✱Late Rent Fee - Late Fee for Feb 2018 | 42.10 | | 498.00 |
| 01/10/2018 | Afrikka & LaVaniel Ennis | eCheck | 39CE-ADDA | Owner Distribution - Owner payment for 01/2018 | | 321.00 | 177.00 |
| 02/05/2018 | RVA Rental Properties. LLC | Check | 1607 | Management fees - Management fees for 01/2018 | | 100.00 | 77.00 |
| 02/12/2018 | Kevleena Webb | Receipt | 666821741 | Rent Income - February 2018 | 411.00 | | 488.00 |
| 02/12/2018 | Afrikka & LaVaniel Ennis | eCheck | 50C8-0E1E | Owner Distribution - Owner payment for 02/2018 | | 388.00 | 100.00 |
| 03/03/2018 | RVA Rental Properties. LLC | Check | 1625 | Management fees - Management fees for 02/2018 | | 100.00 | 0.00 |
| 03/05/2018 | Kevleena Webb | Receipt | 9435 | Rent Income - February 2018 | 0.90 | | 0.90 |
| 03/05/2018 | Kevleena Webb | Receipt | 9435 | Rent Income - March 2018 | 419.10 | | 420.00 |
| 03/07/2018 | Afrikka & LaVaniel Ennis | eCheck | 2143-9A08 | Owner Distribution - Owner payment for 03/2018 | | 320.00 | 100.00 |
| 04/06/2018 | Kevleena Webb | Receipt | 8725 | Rent Income - April 2018 | 420.00 | | 520.00 |
| 04/06/2018 | Afrikka & LaVaniel Ennis | eCheck | B6A5-D37A | Owner Distribution - Owner payment for 04/2018 | | 320.00 | 200.00 |
| 05/02/2018 | RVA Rental Properties. LLC | Check | 1686 | Management fees - Management fees for 03/2018 | | 100.00 | 100.00 |

| Date | Payee / Payer | Type | Reference | Description | Income | Expense | Balance |
|---|---|---|---|---|---|---|---|
| 05/02/2018 | RVA Rental Properties, LLC | Check | 1686 | Management fees - Management fees for 04/2018 | | 100.00 | 0.00 |
| 05/07/2018 | Kevleena Webb | Receipt | 1348 | Rent Income - May 2018 | 420.00 | | 420.00 |
| 05/07/2018 | Afrikka & LaVaniel Ennis | eCheck | 7908-773E | Owner Distribution - Owner payment for 05/2018 | | 320.00 | 100.00 |
| 05/14/2018 | Bill Anderson | Check | 1712 | General Maintenance Labor - replace 2 stair treadson front porch, reattached handrail for inside staircase, repaired wall and painted. | | 250.00 | -150.00 |
| 06/19/2018 | Kevleena Webb | Receipt | 71442 | Rent Income - March 2018 | 1.90 | | -148.10 |
| 06/19/2018 | Kevleena Webb | Receipt | 71442 | Rent Income - April 2018 | 1.00 | | -147.10 |
| 06/19/2018 | Kevleena Webb | Receipt | 71442 | Rent Income - May 2018 | 1.00 | | -146.10 |
| 06/19/2018 | Kevleena Webb | Receipt | 71442 | Rent Income - June 2018 | 286.10 | | 140.00 |
| 06/19/2018 | Kevleena Webb | Receipt | 17263 | Rent Income - June 2018 | 134.90 | | 274.90 |
| 06/19/2018 | Kevleena Webb | Receipt | 17263 | Late Rent Fee - Late Fee for Jun 2018 | 15.10 | | 290.00 |
| 06/19/2018 | Afrikka & LaVaniel Ennis | eCheck | 3506-BC66 | Owner Distribution - Owner payment for 06/2018 | | 190.00 | 100.00 |
| 07/09/2018 | Kevleena Webb | Receipt | 501550572 | Late Rent Fee - Late Fee for Jun 2018 | 27.00 | | 127.00 |
| 07/09/2018 | Kevleena Webb | Receipt | 501550572 | Rent Income - July 2018 | 273.00 | | 400.00 |
| 07/09/2018 | Afrikka & LaVaniel Ennis | eCheck | D8FA-68DA | Owner Distribution - Owner payment for 07/2018 | | 200.00 | 200.00 |
| 08/05/2018 | Kevleena Webb | Receipt | 4163 | Rent Income - August 2018 | 234.00 | | 434.00 |
| 08/05/2018 | Kevleena Webb | Receipt | 1298 | Rent Income - July 2018 | 148.00 | | 582.00 |
| 08/05/2018 | Kevleena Webb | Receipt | 1298 | Rent Income - August 2018 | 52.00 | | 634.00 |
| 08/06/2018 | Afrikka & LaVaniel Ennis | eCheck | 7282-15E6 | Owner Distribution - Owner payment for 08/2018 | | 334.00 | 300.00 |
| 08/13/2018 | Kevleena Webb | Receipt | 0703 | Late Rent Fee - Late Fee for Jul 2018 | 42.10 | | 342.10 |
| 08/13/2018 | Kevleena Webb | Receipt | 0703 | Rent Income - August 2018 | 97.90 | | 440.00 |
| 08/27/2018 | Afrikka & LaVaniel Ennis | eCheck | 5659-1A1A | Owner Distribution - Owner payment for 08/2018 | | 140.00 | 300.00 |
| 09/06/2018 | Kevleena Webb | CC receipt | DAZK-Q3LE | Rent Income - August 2018 | 37.10 | | 337.10 |
| 09/06/2018 | Kevleena Webb | CC receipt | DAZK-Q3LE | Late Rent Fee | 42.10 | | 379.20 |
| 09/06/2018 | Kevleena Webb | CC receipt | DAZK-Q3LE | Rent Income - September 2018 | 63.10 | | 442.30 |
| 09/06/2018 | Kevleena Webb | CC receipt | EIG9-5VHE | Rent Income - September 2018 | 400.00 | | 842.30 |
| 09/10/2018 | Afrikka & LaVaniel Ennis | eCheck | 3EA0-C58C | Owner Distribution - Owner payment for 09/2018 | | 442.30 | 400.00 |

| Date | Payee / Payer | Type | Reference | Description | Income | Expense | Balance |
|------|---------------|------|-----------|-------------|--------|---------|---------|
| 09/12/2018 | Kevleena Webb | Receipt | 0796 | Rent Income - September 2018 | 226.00 | | 626.00 |
| 09/20/2018 | Afrikka & LaVaniel Ennis | eCheck | 2A8B-E0E0 | Owner Distribution - Owner payment for 09/2018 | | 226.00 | 400 00 |
| 10/08/2018 | Kevleena Webb | Receipt | 0352 | Rent Income - September 2018 | 79.20 | | 479.20 |
| 10/08/2018 | Kevleena Webb | Receipt | 0352 | Rent Income - October 2018 | 420.80 | | 900.00 |
| 10/08/2018 | Kevleena Webb | Receipt | 0353 | Rent Income - October 2018 | 220.00 | | 1,120.00 |
| 10/10/2018 | Afrikka & LaVaniel Ennis | eCheck | 3C14-F17A | Owner Distribution - Owner payment for 10/2018 | | 648.00 | 472.00 |
| 10/15/2018 | Kevleena Webb | Receipt | | Rent Income - September 2018 | 0.70 | | 472.70 |
| 10/15/2018 | Kevleena Webb | Receipt | | Rent Income - October 2018 | 49.00 | | 521.70 |
| 10/15/2018 | Kevleena Webb | Receipt | | Late Rent Fee - Late Fee for Oct 2018 | 0.30 | | 522.00 |
| 11/24/2018 | Afrikka & LaVaniel Ennis | eCheck | 3240-272C | Owner Distribution - Owner payment for 11/2018 | | 1,550.00 | -1,028.00 |
| 12/20/2018 | RVA Rental Properties, LLC | Receipt | | Security Deposits Clearing - Kevleena Webb, 7118 West Road: Security Deposit Transfer | 1,650.00 | | 622.00 |
| | | | | Ending Cash Balance | | | 622.00 |
| Total | | | | | 6,645.50 | 6,049.30 | |

## Property Cash Summary

1. Aarons Sales & Lease
   7528 Midlothian Tpke # B
   Richmond, VA 23225

2. Ability Recovery Service
   Attn: Bankruptcy
   Po Box 4262
   Scranton, PA 18505

3. Acceptance Now
   5501 Headquarters Drive
   Plano, TX 75024

4. Acima Credit Fka Simpl
   9815 S Monroe St Fl 4
   Sandy, UT 84070

5. Advance 24 Financial
   3975 Hixson Pike
   Chattanooga, TN 37415

6. Afrikka Ennis
   8218 Tatterton Trail
   Richmond, VA 23237

7. Angela Barnes
   2727 Enterprise Parkway
   Henrico, VA 23294

8. Bank of America
   P.O. Box 15019
   Wilmington, DE 19886

9. Cashnet USA- Bankruptcy
   175 W. Jackson Blvd.
   Suite 1000
   Chicago, IL 60604

10. Chase Auto
    Po Box 901003
    Ft Worth, TX 76101

**K. Webb is seeking relief from 38 creditors in 20-30776 bankruptcy filing. This is an increase in the number of creditors of approx. 58.3% in the 8 months since filing 19-33315 and a total increase of approx 137.5% in the 32 months since initial filing 17-33014 in June 2017.**

11. Chesterfield County Utilities
ATTN BANKRUPTCY
PO Box 608
Chesterfield, VA 23832

12. Choice Waste Services
PO Box 3687
Chester, VA 23831

13. CJW Hospitals
c/o NPAS Inc.
PO Box 99400
Louisville, KY 40299

14. CJW Hospitals
c/o Cawthorn Et. Al
8701 Metropolitan Ct, Ste C
Richmond, VA 23236

15. Commonwealth Financial
245 Main St
Dickson City, PA 18519

16. Credit One Bank
Attn: Bankruptcy Department
Po Box 98873
Las Vegas, NV 89193

17. Credit One Bank
P.O. Box 98873
Las Vegas, NV 89193

18. Direct TV
PO Box 11732
Newark, NJ 07101

19. Eastwood Homes at Watermark
7020 Hawser Lane
North Chesterfield, VA 23234

20. First PREMIER Bank
Attn: Bankruptcy
Po Box 5524
Sioux Falls, SD 57117

21. Focused Recovery Solut
    9701 Metropolitan Ct Ste
    North Chesterfield, VA 23236

22. HRRG
    PO Box 5406
    Cincinnati, OH 45273-7942

23. I C System Inc
    Attn: Bankruptcy
    P.O. Box 64378
    St. Paul, MN 55164

24. IC System, Inc
    Attn: Bankruptcy
    Po Box 64378
    Saint Paul, MN 55164

25. James River Emergency Group
    P.O. Box 660827
    Dallas, TX 75266

26. Meridian at Watermark
    6500 Caymus Way
    Richmond, VA 23234

27. Penn Foster Student Service Ce
    925 Oak Street
    Scranton, PA 18515

28. Telecom Self-reported
    Po Box 4500
    Allen, TX 75013

29. Transworld Sys Inc/51
    Po Box 15618
    Wilmington, DE 15618

30. Transworld Sys Inc/926
    P.O. Box 15109
    Wilmington, DE 19850

31. VDOT
Professional Account Mngmt
PO Box 785
Milwaukee, WI 53201-0785

32. Verizon
P.O. Box 660720
Dallas, TX 75266-0270

33. Violation Processing Center
P.O. Box 1234
Clifton Forge, VA 24422

34. Virginia Credit Union
P.O. Box 90010
Richmond, VA 23225

35. Virginia Emer Phys LLP
75 Remittance Drive
Suite 1151
Chicago, IL 60675

36. VLPP
201 North Hamilton Street
Richmond, VA 23221

37. Wells Fargo Bank
Po Box 14517
Des Moines, IA 50306

38. Wells Fargo Bank
PO Box 9210
Des Moines, IA 50306

1. Aarons Sales & Lease
7528 Midlothian Tpke # B
Richmond, VA 23225

2. Ability Recovery Service
Attn: Bankruptcy
Po Box 4262
Scranton, PA 18505

3. Acceptance Now
5501 Headquarters Drive
Plano, TX 75024

4. Acima Credit Fka Simpl
9815 S Monroe St Fl 4
Sandy, UT 84070

5. Afrikka L. Ennis
8218 Tatterton Trail
Richmond, VA 23237

6. Bank of America
P.O. Box 15019
Wilmington, DE 19886

7. Cashnet USA- Bankruptcy
175 W. Jackson Blvd.
Suite 1000
Chicago, IL 60604

8. Chase Auto
Po Box 901003
Ft Worth, TX 76101

9. CJW Hospitals
c/o Cawthorn Et. Al
8701 Metropolitan Ct, Ste C
Richmond, VA 23236

10. Commonwealth Financial
245 Main St
Dickson City, PA 18519

**K. Webb sought relief from 24 creditors, in bankruptcy plan 19-33315 filed June 2019. This is an increase of approx. 50% in the 24 months since her initial filing of plan 17-033014 in June 2017.**

11.  Direct TV
     PO Box 11732
     Newark, NJ 07101

12.  Focused Recovery Solut
     9701 Metropolitan Ct Ste
     North Chesterfield, VA 23236

13.  I C System Inc
     Attn: Bankruptcy
     P.O. Box 64378
     St. Paul, MN 55164

14.  James River Emergency Group
     P.O. Box 660827
     Dallas, TX 75266

15.  Joyner Fine Properties
     2727 Enterprise Parkway
     Henrico, VA 23294

16.  Penn Foster Student Service Ce
     925 Oak Street
     Scranton, PA 18515

17.  Transworld Sys Inc/51
     Po Box 15618
     Wilmington, DE 15618

18.  Transworld Sys Inc/926
     P.O. Box 15109
     Wilmington, DE 19850

19.  Verizon
     P.O. Box 660720
     Dallas, TX 75266-0270

20.  Violation Processing Center
     P.O. Box 1234
     Clifton Forge, VA 24422

21.  Virginia Credit Union
     P.O. Box 90010
     Richmond, VA 23225

22.
Virginia Emer Phys LLP
75 Remittance Drive
Suite 1151
Chicago, IL 60675

23.
Wells Fargo Bank
Po Box 14517
Des Moines, IA 50306

24.
Wells Fargo Bank
PO Box 9210
Des Moines, IA 50306

1.  Acceptance Now
    5501 Headquarters Drive
    Plano, TX 75024

2.  Acima Credit Fka Simpl
    9815 S Monroe St Fl 4
    Sandy, UT 84070

3.  Bank of America
    P.O. Box 15019
    Wilmington, DE 19886

**Debtor K. Webb was seeking
relief from 16 creditors in
bankruptcy plan 17-33014
filed in June 2017.**

4.  Chase Auto
    Po Box 901003
    Ft Worth, TX 76101

5.  Comcast
    PO Box 3001
    Southeastern, PA 19398

6.  Commonwealth Financial
    245 Main St
    Dickson City, PA 18519

7.  Focus Recry
    9701 Metropolitan Ct Ste
    North Chesterfield, VA 23236

8.  Focused Recovery Solut
    9701 Metropolitan Ct Ste
    North Chesterfield, VA 23236

9.  Main Street Properties
    2111 Main Street
    Richmond, VA 23220

10. Rent A Center
    3330 S Crater Rd
    Petersburg, VA 23805

11. Transworld Sys Inc/51
    507 Prudential Rd
    Horsham, PA 19044

12.  Transworld Sys Inc/926
     P.O. Box 15109
     Wilmington, DE 19850


13.  Verizon
     P.O. Box 660720
     Dallas, TX 75266-0270


14.  Virginia Credit Union
     P.O. Box 90010
     Richmond, VA 23225


15.  Wells Fagro
     P O Box 10347
     Des Moines, IA 50306


16.  Wells Fargo Bank
     Po Box 14517
     Des Moines, IA 50306





## VIRGINIA ASSOCIATION OF REALTORS®
## RESIDENTIAL LEASE
**(This is a legally binding contract. If not understood, seek competent advice before signing.)**

REALTOR®

EFFECTIVE DATE OF LEASE: _____07/29/14_____

This Property will be shown and made available to all persons without regard to race, color, creed, religion, national origin, sex, familial status, handicap or elderliness in compliance with all applicable and federal, state and local fair housing laws and regulations.

THIS LEASE AGREEMENT (the "Lease") is made as of the __29_ day of ___July___, 20_14_, by and between _____**Layaniel Ennis**_____**Afrikka Ennis**_____ ("Landlord") whose address is ____ _fr_ _____ through _____**RVA Rental Properties, LLC**_____ ("Landlord's Broker," who represents Landlord) whose address is **1231 Alverser Drive,**_____**Midlothian**_____**VA**____**23113** ; _____**Kavleena Webb**_____ ("Tenant"); and_____ ("Tenant's      Broker,")    who represents Tenant). Landlord's Broker is sometime hereinafter referred to as "Agent".
NOW, THEREFORE, in consideration of the mutual covenants and conditions contained therein, Landlord and Tenant agree as follows:

Landlord does hereby lease and demise unto Tenant, and Tenant does hereby lease and take from Landlord the Dwelling Unit hereinafter described (the "Dwelling Unit") on the terms and conditions set forth in this Lease.

1.    SUMMARY OF LEASE TERMS:

      a.     **Address of Dwelling Unit:**
                    **7118 West Road**
                    **Chesterfield VA 23832**

      b.     **Term**

           Commencement Date of Lease: _____**07/29/14**_____ at ___**12**___ ☐ am OR ☒ pm
           Length of Term is:
           Lease Term Ends: _____**07/31/15**_____ at ___**12**___ ☐ am OR ☒ pm

      c.     **Rent**

           Monthly Rent:  $_____**371.00**_____
           Per Diem Rent:  $_____**11.96**_____
           Prorated Rent (for period from __**29**__ to __**31**__ ): $_____**35.88**_____     **821.88** 
           Additional Rent:
                 Non-Refundable Lease Fee:      $_____
                 Non-Refundable Pet Fee, if applicable:  $_____
                 Non-Refundable Unauthorized Pet Fee:
                   ($_____ ), if applicable
                 Pet Rent, if applicable:        $_____
                 Damage Insurance:           $_____
                      Actual cost of policy:   $_____
                      Administrative fee:     $_____
                      Opt-out fee:         $_____
                 Renter's Insurance:        $_____
                      Actual cost of policy:   $_____
                      Administrative fee:     $_____
                      Opt-out fee:         $_____
                 Other _____:    $_____
                 Other _____:    $_____
                 Other _____:    $_____

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

Instanet forms

Total Rent: $ 371.00
(Rent may be increased pursuant to the terms of this Lease)
Late Fee: 10% of the total Monthly Rent, or $50.00, whichever is greater.

d.   Monthly Rent to be payable to ~~Lavanial~~ *Levanial* & Afrikka Ennis,
located at c/o RVA Rental Properties, 1231 Alverser Drive,
Midlothian, VA 23113

e.   Description of Dwelling Unit:
Unit Type        sing fam    Number of Baths: 2.5
Number of Bedrooms    4    Other:   2-car garage

f.   Appliances and other personal property provided: oven, washer/dryer,
fridge, garbage disposal, microwave, security system,
2-garage door openers, dishwasher, window treatments

g.   Occupancy of the Dwelling Unit shall be limited to   6   persons whose
names other than Tenant are as follows ("Occupants"): Brianna Webb,
Ryan Webb, Angel Webb, Taleia Webb, Antwinnette Webb,
Randy Forbes

h.   i) Utilities provided by Landlord and included in Rent: none

ii) Utilities that Tenant must obtain individually: water/sewer, gas, electric,
cable, internet, phone, trash, security system
iii) Utilities provided by Landlord, and billed separately to Tenant: none

i.   Security Deposit:

Move-In Security Deposit:        $          371.00
Pet Deposit:                     $
Total Security Deposit:          $          371.00
Security Deposit will be held by [ ] Landlord OR [x] Agent.

j.   Cancellation and Renewal of Lease:  Either party may terminate this Lease effective as of
the end of the then-existing Term by giving the other party written notice at least
_____Sixty_____ ( 60 ) days before the end of the then-existing Term. If no such
notice of termination is given, the Term of this Lease shall be extended for self-renewing
terms of _____sixty days_____. If Landlord intends to change the terms or
conditions of this Lease, including increasing the Rent, for any renewal term thereafter,
Landlord will give Tenant written notice at least   60   days prior to the end of the
then applicable term.

2.   **APPLICABLE VIRGINIA LAW.** This landlord tenant relationship is in accordance with Chapter 13.2 of Title 55 of the
Code of Virginia (1950), as amended, generally known as the Virginia Residential Landlord Tenant Act (the
"VRLTA").

3.   **SECURITY DEPOSIT.** Tenant has deposited the amount shown in Section 1(i) as a Security Deposit, to secure a
complete and faithful performance by Tenant of all terms and conditions of this Lease, and the obligations imposed
on Tenant by applicable Virginia Law.

a.   Disposition.  Pursuant to the VRLTA, Landlord may apply all or part of the Security Deposit to the payment
of accrued Rent and the amount of any damages that have been suffered by Landlord, including but not
limited to, physical damages, appropriate charges to Tenant not previously reimbursed to Landlord, charges
that may be due by Tenant to third-party utility providers in accordance with the provisions of Section 55-
248.15:1(A) of the VRLTA, and actual damages for breach of this Lease, including attorneys' fees and costs.
Landlord shall have the right to apply the Security Deposit to any outstanding fees, charges or other
amounts due first, and then to any unpaid Rent.  Within forty-five (45) days after termination of the tenancy
and return of possession of the Dwelling Unit by Tenant to Landlord, Landlord will provide Tenant with an

VAR FORM 200  REV. 07/14            *PAGE 2 OF 14*

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the
Central Virginia Regional MLS.



itemized listing of all deductions made from the Security Deposit, and with payment of any amount due to Tenant. If Tenant complies with all terms and conditions of the Lease and with the VRLTA, Landlord will return to Tenant the Security Deposit, together with any accrued interest if required by law, within forty-five (45) days after termination of the tenancy and return of possession of the Dwelling Unit to Landlord by Tenant. If the damages to the Dwelling Unit exceed the amount of the Security Deposit and require the services of a third-party contractor, Landlord shall give written notice to Tenant advising of the fact within a forty-five (45) day period. If such notice is given, Landlord shall have an additional fifteen (15) day period to provide an itemization of the damages and the cost of repair. Any interest earned on the Security Deposit in excess of that amount that Landlord is required to pay to Tenant under the VRLTA will be retained by Agent to cover administrative costs. However, on or after January 1, 2015, there shall be no interest due and payable on security deposits held under this Lease and in accordance with the VRLTA. Any accrued interest due and payable as of December 31, 2014, shall be paid to Tenant no later than forty-five (45) days after termination of the tenancy and return of possession of the Dwelling Unit by Tenant.

b.  Forwarding Address. Tenant shall provide Landlord written notice prior to vacating the Dwelling Unit of the forwarding address so that Landlord can forward to Tenant a statement explaining the disposition of the Security Deposit prior to the end of the 45-day period provided herein. If Tenant fails to give notice of a forwarding address, Landlord will send the Security Deposit statement to the last known address of Tenant, but will retain the Security Deposit refund, if any, until Tenant notifies Landlord of the appropriate address. If no forwarding address is provided to Landlord, upon the expiration of one year from the date of the end of the 45-day time period, the balance of such security deposit shall escheat to the Commonwealth of Virginia, in accordance with Section 55-248.15:1 of the VRLTA. Upon payment to the Commonwealth, Landlord shall have no further liability to any Tenant relative to the security deposit.

c.  Multiple Tenants. Where more than one Tenant signs this Lease, a deduction to be made from the Security Deposit will be joint and several, and Landlord is not liable for any understanding that may exist between two or more Tenants as to the portion of the Security Deposit that one Tenant may be entitled to, as opposed to another Tenant. Landlord will draw one check payable to all Tenants jointly, or at Landlord's election, to any one Tenant who shall be responsible for distribution to the other Tenants, and forward same to forwarding address provided to Landlord by written notice as required herein.

d.  Move-Out Inspection. Under the VRLTA, Landlord will make reasonable efforts to provide Tenant with notice of a right to be present at the time of move-out inspection. Landlord will include in the vacating notice language to inform Tenant of this right to be present. Tenant must make a written request to Landlord to be present at such an inspection, and Landlord will notify Tenant of the inspection times which will occur within 72 hours of the termination of the tenancy. If Tenant fails to make such a request, or fails to schedule an inspection, Landlord will proceed to do the check-out inspection without Tenant being present.

e.  Setoff Prohibited. Tenant shall have no right to deduct the Security Deposit from the rental payment for the last month of any term of this Lease.

f.  Landlord's Successor Obligated for Security Deposit. If Landlord in any way transfers its interest in the Dwelling Unit, or if the Agent transfers management of the Dwelling Unit and the apartment community in which the Dwelling Unit is located (the "Premises"), to a third party, Agent or Landlord, as the case may be, may transfer the Security Deposit to the transferee and both are thereafter released from all liability for the return of the Security Deposit to Tenant. If such a transfer occurs, Tenant agrees to look to the transferee solely for the return of the Security Deposit and to release Landlord and/or Agent, as the case may be, from all obligations and liability relating thereto.

g.  Damage Addendum. The Damage Addendum, attached hereto and incorporated by reference herein, establishes a tentative schedule of standard deductions to be utilized by Landlord in assessing charges against Tenant for physical damages to the Dwelling Unit or the Premises, less reasonable wear and tear. Landlord reserves the right to alter the said schedule if the repair costs should become higher than those listed thereon. Landlord further reserves the right to assess against Tenant for such damages the actual costs of the materials and repairs, if there is a variance between the tentative schedule and the actual bill for such materials and repairs. The Damage Addendum also establishes the tentative schedule for charges to be made by Landlord against Tenant during the Term of the tenancy for any damages as may occur.

Landlord reserves the right to require a commercial insurance policy commonly known as "damage insurance" to secure the performance by Tenant of the terms and conditions of this Lease, in lieu of all or part of the security deposit, as provided in Section 55-248.7:2 of the VRLTA. The actual costs of any damage insurance policy and the administrative fee as set forth in Section 1(c) shall be charged to the Tenant as additional rent. Tenant shall have the option to purchase their own damage insurance policy, provided the policy otherwise meets the requirements of this paragraph, in which case Tenant shall be charged the monthly opt-out fee specified in Section 1(c). For any damage insurance policy obtained by Tenant in accordance with this paragraph, Tenant agrees to maintain such policy in full force and effect for the full term of this Lease, including any extensions or renewals thereof, and to provide Landlord

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the
Central Virginia Regional MLS.



sufficient proof of such insurance.    Any damage insurance policy provided by Landlord shall terminate contemporaneously with the termination of this Lease.

4.  **RENT.**

    a.    <u>Rent Payments</u>. The total Rent for the initial Term of this Lease is set out in section 1(c) of this Lease. Monthly payments of Rent are payable in advance, without demand, and in full without prorating or setoff, on the first day of each calendar month and shall be paid to at the address set forth in section 1(d) above or at such other places as Landlord may designate by advance written notice to Tenant. Landlord is authorized to accept prepaid Rent in accordance with the provisions of the VRLTA. Landlord will provide Tenant a written receipt upon the request of Tenant, if Tenant pays rent in the form of cash or a money order (if allowed by Landlord). Upon the written request of Tenant, Landlord shall provide Tenant with an accounting of charges and payments in accordance with Section 55-248.7 of the VRLTA.

    b.    <u>Late Payment</u>. If the rental payment is received after the 5th day of the month, a Late Fee in the amount specified in section 1(c) of this Lease will be assessed against Tenant. Any rental payment received after legal action has been initiated by Landlord will be accepted with reservation and will be applied to delinquent rent due, but will not affect any legal action instituted by Landlord against Tenant to recover delinquent rent and possession of the Dwelling Unit.

    c.    <u>Returned Checks</u>. Landlord reserves the right to require that all monthly installments be made by money order or certified funds, or to require automatic or electronic payment. Checks that are returned for insufficient funds or otherwise, or failed electronic funds transfer, will result in the following charges, in addition to the late charges specified herein and the face amount of the check or electronic funds transfer, and all other amounts recoverable by Landlord pursuant to this Lease or by law: (i) a reimbursement of any bad check return or failed electronic funds transfer fee charged by the bank; (ii) a bad check or failed electronic funds transfer processing fee in the amount of $50; (iii) legal interest from the date of the check or transfer; and (iv) a civil recovery not to exceed $250.

    d.    <u>Rent is Inclusive</u>. As used in this Lease and under the VRLTA, "Rent" means all money, other than a security deposit, owed or paid to Landlord under this Lease, including prepaid Rent paid more than one month in advance of the Rent due date.

5.  **INSPECTION AND CONDITION OF DWELLING UNIT.**

    a.    <u>Move-In Inspection Report</u>. Tenant has made an inspection of the Dwelling Unit, and Tenant agrees that the Dwelling Unit is in a fit and habitable condition, except for such damages as have been itemized in a written "Residential Move-In Move-Out Inspection Report", a copy of which will be submitted by Landlord to Tenant within five (5) days after occupation of the Dwelling Unit by Tenant. The Residential Move-In Move-Out Inspection Report will be deemed correct unless Tenant objects to it in writing five (5) days after Landlord has provided same to Tenant. Tenant hereby acknowledges that the Residential Move-In Move-Out Inspection Report reflects that there is no visible evidence of mold in the Dwelling Unit or that portion of the Premises which is occupied by Tenant. If the Landlord's Residential Move-In Move-Out Inspection Report states that there is visible evidence of mold in the Dwelling Unit, Tenant shall have the option to terminate the Lease or remain in possession of the Dwelling Unit. If Tenant elects not to terminate the Lease, notwithstanding the presence of visible evidence of mold, Landlord shall promptly remediate the mold condition, but in no event later than five business days thereafter, and re-inspect the Dwelling Unit to confirm there is no visible evidence of mold in the Dwelling Unit, and so state on a new Residential Move-In Move-Out Inspection upon re-inspection.

    b.    <u>Locks</u>. Landlord, at Tenant's request and at Tenant's sole cost and expense, will have all locks on the Dwelling Unit rekeyed. Tenant may, at any time, ask Landlord to: (i) install one keyed deadbolt lock on all exterior doors, if the Dwelling Unit does not already have one installed on each door; (ii) install a sliding door pinlock and/or a security bar on each sliding glass door; (iii) install one door viewer on each exterior door; and (iv) change or rekey locks during the Term. Landlord will comply with any such request at Tenant's cost and expense, in accordance with the amounts shown in the Damage Addendum, with all such costs to be paid by Tenant as additional rent with the next monthly payment of Rent by Tenant after receipt by Tenant of an invoice from Landlord.

    c.    <u>New Locks Pursuant to Court Order</u>. Any Tenant who has obtained an order (excluding ex parte orders) granting such Tenant possession of the Dwelling Unit to the exclusion of one or more other Tenants or authorized occupants in accordance with the provisions of Section 55-248.18:1 of the VRLTA may request Landlord to install new locks or other security devices on all exterior doors of the Dwelling Unit. Tenant will *reimburse Landlord's actual costs for such new locks or security devices. All such costs will be paid by Tenant as additional rent with the next monthly payment of Rent by Tenant after receipt by Tenant of an invoice from Landlord*

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



6. **USE, OCCUPANCY AND MAINTENANCE.**

    a.   Use. Tenant covenants that the Dwelling Unit will be used only as a dwelling unit and in a manner that will not disturb neighboring tenants and that will not damage the Dwelling Unit or the Premises. Tenant will not permit any authorized occupants or guests or invitees in or about the Dwelling Unit or the Premises either to disturb neighboring tenants or to cause physical damage to the Dwelling Unit or the Premises. Tenant shall not deliberately or negligently destroy, deface, damage or impair any part of the Dwelling Unit or the Premises (including fixtures, facilities and appliances) or permit any person to do so with or without Tenant's knowledge, and Tenant shall be responsible for any damage caused by Tenant's failure to comply with this requirement. Tenant shall give Landlord prompt notice if any such damage occurs.

    b.   *Occupancy.* No persons, other than those named as Tenant and as authorized occupants in section 1(g) of this Lease, may occupy the Dwelling Unit on a regular basis. For the purpose of this Lease, occupancy by an unauthorized person for more than seven (7) calendar days consecutively, or fourteen (14) calendar days in any calendar year, without prior written consent from Landlord, will constitute occupancy of the Dwelling Unit on a regular basis and will constitute a default under this Lease. If at any time more than one person is named as a Tenant in this Lease, the obligations of each Tenant shall be joint and several.

    c.   Assignment/Sublease. Tenant shall not assign this Lease or sublet any portion of the Dwelling Unit without the prior written consent of Landlord, which consent Landlord will be under no obligation whatsoever to grant. Landlord shall have the right to consider any assignment or sublease made without Landlord's prior written consent void.

    d.   *Compliance with Codes; Fixtures.* Tenant shall comply with all obligations imposed by applicable building and housing codes materially affecting health and safety, and shall keep the Dwelling Unit, including plumbing and other fixtures, appliances, and facilities in a good, clean, safe and sanitary condition. Tenant shall use in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other fixtures, appliances, and facilities in the Dwelling Unit and shall maintain the utility services paid for by Tenant on at all times during the Term. Tenant shall be responsible for any and all damages caused by Tenant's failure to comply with this requirement.

    e.   Appliances. Tenant shall keep all appliances and equipment in good and clean condition, with the exception of reasonable wear and tear. Tenant shall not install or use any other major appliances or equipment in the Dwelling Unit without prior written permission of Landlord.

    f.   Smoke Detectors. Tenant shall be responsible for reasonable care and maintenance of smoke detectors in the Dwelling Unit in accordance with Section 55-248.16 Code of Virginia, and shall be responsible for interim testing and for providing written notice to Landlord of the need for repair of any malfunctioning smoke detector. Tenant shall not remove or tamper with any smoke detector, including removing any working batteries, so as to render the detector inoperative. In accordance with Section 55-248.13 of the Code of Virginia, Landlord, at Landlord's expense, shall provide for the service, repair or replacement of smoke detectors in need thereof within five (5) days of receipt of written notice from Tenant that a smoke detector is in need of service, repair or replacement.

    g.   Carbon Monoxide Detectors. Tenant shall have the right to request in writing that Landlord install a carbon monoxide detector in the Dwelling Unit, the cost of which may be charged to Tenant, in accordance with Section 55-248.18 of the VRLTA. Tenant shall not remove or tamper with a properly functioning carbon monoxide detector, including removing any working batteries, so as to render the detector inoperative.

    h.   Mold. Tenant will use reasonable efforts to maintain the Dwelling Unit in such a condition as to prevent *accumulation of moisture and the growth of mold,* and to notify Landlord in writing promptly of any moisture accumulation that occurs or of any visible evidence of mold discovered by Tenant. Tenant does hereby release Landlord and Agent from any and all claims or liability to Tenant, Tenant's authorized occupants, or guests or invitees, and does hereby agree to indemnify and hold Landlord and Agent harmless from and against any and all loss, damage, claim, suit, costs (including reasonable attorneys fees and costs at all tribunal levels) or other liability whatsoever resulting from Tenant's failure to comply with the provisions of this subsection or any other provisions of law.

    i.   Insects and Pests. Tenant shall keep the Dwelling Unit free from insects and pests, and promptly notify the Landlord of the existence of any insects or pests. Tenant shall prepare the Dwelling Unit for the application of insecticides or pesticides in accordance with any written instructions of Landlord, and if insects or pests *are found to be present, follow any written instructions provided by Landlord to eliminate the insects or pests* following the application of insecticides or pesticides. Tenant who has concerns about specific insecticides or pesticides shall notify the Landlord in writing no less than 24 hours before any scheduled insecticide or pesticide application, in accordance with Section 17 of this Lease. Tenant does hereby release Landlord and Agent from any and all claims or liability to Tenant, Tenant's authorized occupants, or guests or invitees, and does hereby agree to indemnify and hold Landlord and Agent harmless, from and against any and all losses, damages, claims, suits, costs (including reasonable attorneys fees and costs) or other liabilities whatsoever arising from the presence of insects or pests in the Dwelling Unit, and/or resulting from Tenant's failure to comply with the provisions of this subsection or any other provisions of law.

*This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.*

Instanet
forms

    j.    <u>Painting and Alterations</u>. Tenant shall not paint or disturb any painted surfaces or make other alterations to the Dwelling Unit without Landlord's prior written approval. Tenant shall notify Landlord and Agent in the event there is any chipped or peeling paint in the Dwelling Unit.

    k.    <u>Compliance with Law</u>. Tenant shall comply with any and all obligations imposed upon Tenant by applicable Virginia law, including the VRLTA.

    l.    <u>Landlord Obligations</u>. Landlord shall:

        i.    Upon written request of Tenant in accordance with Section 6(g) of this Lease, install a carbon monoxide alarm in the Dwelling Unit within ninety (90) days of such request. Landlord may charge the Tenant a reasonable fee to recover the costs of such installation. The Landlord's installation of a carbon monoxide alarm shall be in compliance with the Uniform Statewide Building Code. Landlord shall maintain a carbon monoxide alarm that Landlord has installed in the Dwelling Unit.

        ii.    Comply with the specific duties imposed upon landlords in Section 55-248.13 of the VRLTA. Landlord may only be liable to Tenant for damages proximately caused by Landlord's breach of said statute or a specific provision of this Lease Agreement.

## 7. UTILITIES.

    a.    The utilities provided by Landlord and included in the Rent are listed in section 1(h)(i). Tenant shall obtain all utility and other services listed in section 1(h)(ii), or not otherwise listed in Section 1(h) as being provided by Landlord. All such utility and other services shall be paid directly by Tenant, and Tenant shall pay any deposits and monthly bills due to the applicable providers. Tenant shall pay in full all charges for utilities and other services which Landlord separately bills Tenant as set forth in section 1(h)(iii), and in accordance with the applicable invoice (if any). Tenant shall keep all essential utility services turned on, in and to the Dwelling Unit during any Lease term. Landlord shall not be liable for the failure to provide these services or for the interruption of such services if such failure or interruption is due to any cause beyond the control of Landlord.

    b.    Landlord reserves the right to use sub-metering or energy allocation equipment, or to allocate utility costs on the basis of ratio utility billing ("RUBs"), as provided in the VRLTA, for the utilities provided by Landlord. If Landlord chooses to allocate utility costs on the basis of RUBs, Landlord will bill Tenant for an appropriate prorata share of such utility costs, which bill shall be due and payable as additional rent at the first of the next month.

## 8. PERSONAL PROPERTY OF TENANT

    a.    <u>Renter's Insurance</u>. All personal property placed in or about the Dwelling Unit or the Premises shall be at the sole risk of Tenant or the parties owning the same, and Landlord shall not be liable for the loss, destruction, theft of, or damage to such property. Tenant shall obtain insurance coverage (commonly referred to as "renter's insurance"), which shall meet the minimum coverage limits and other terms specified by Landlord. Landlord reserves the right to require Tenant to pay for the cost of renter's insurance obtained through Landlord, in which case the actual costs for such insurance and the administrative fee as set forth in Section 1(c) shall be charged to Tenant as additional rent. Tenant shall have the option to purchase their own renter's insurance policy, provided the policy otherwise meets the requirements of this Section 8(a), in which case Tenant shall be charged a monthly opt-out fee as set forth in Section 1(c). For any renter's insurance policy obtained by Tenant in accordance with this Section 8(a), Tenant agrees to maintain such policy in full force and effect for the full term of this Lease, including any extensions or renewals thereof, and to provide Landlord sufficient proof of such insurance. Any renter's insurance policy provided by Landlord shall terminate contemporaneously with the termination of this Lease.

    b.    <u>Abandoned Property</u>. Any items of personal property left in or about the Dwelling Unit after Tenant vacates the Dwelling Unit will be considered abandoned property and may be disposed of by Landlord as Landlord sees fit, provided that Landlord has: (i) given Tenant written notice of termination as required by this Lease or the VRLTA including a notice that any items of personal property left in the Dwelling Unit or the Premises would be disposed of within twenty-four hours after termination; (ii) given written notice in accordance with subsection 9(d) of this Lease including notice that any items of personal property left in the Dwelling Unit or the Premises would be disposed of within twenty-four hours after expiration of the seven-day period; or (iii) given written notice to Tenant including a statement that any items of personal property left in the Dwelling Unit or the Premises would be disposed of within twenty-four hours after expiration of a ten-day period from the date of such notice. Tenant shall have the right to remove its personal property from the Dwelling Unit or the Premises at reasonable times during the twenty-four hour period after termination during normal business hours, or during normal business hours until Landlord has disposed of the remaining personal property of Tenant. During such twenty-four hour period and until Landlord disposes of the remaining personal property of Tenant, Landlord shall have no liability for risk of loss of such property.

    c.    <u>Death of Tenant</u>. If a Tenant who is the sole occupant of the Dwelling Unit dies, and there is no person authorized by order of a circuit court to handle probate matters for the deceased Tenant, Landlord may

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



dispose of any personal property left by such Tenant upon giving at least ten (10) days written notice in accordance with Section 55-248.38:3 of the VRLTA. Such notice shall include a statement that any items of personal property left in the Dwelling Unit shall be treated as abandoned property and disposed of, if not claimed within ten (10) days, subject to subsection (b) hereof. This Lease shall be deemed terminated on the date of death of the Tenant; however, the estate of the Tenant shall remain liable for actual damages in accordance with Section 55-248.35 of the VRLTA, subject to Landlord's duty to mitigate damages.

9.     **ACCESS TO THE DWELLING UNIT AND PREMISES BY LANDLORD AND ITS DULY DESIGNATED REPRESENTATIVE(S); REPAIRS.**

a.     Landlord and its duly designated representative(s) may enter the Dwelling Unit and go upon the Premises in order to do the following:

    i.     Upon reasonable notice to Tenant and at reasonable times:

        1.     inspect the Dwelling Unit and the Premises;

        2.     make necessary or agreed repairs, decorations, alterations, or improvements;

        3.     supply necessary or agreed services;

        4.     exhibit the Dwelling Unit and Premises to prospective or actual mortgagees, workmen, contractors, appraisers and/or representatives of any owners' association.

    ii.     Landlord will give Tenant at least twenty-four (24) hours notice, unless impractical to do so, of routine maintenance to be performed that has not been requested by Tenant, and shall not be required to provide prior notice to Tenant for any maintenance requested by Tenant. Landlord may enter the Dwelling Unit without Tenant's consent in cases of emergency. Tenant shall be responsible for paying the cost of any unnecessary service call and any costs incurred as a result of the Tenant failing to keep appointments with service persons that require access in order to make scheduled repairs.

    iii.     Place a "For Sale" sign upon the Dwelling Unit and Premises and exhibit the Dwelling Unit and Premises to prospective purchasers, or, after notice of termination of this Lease by Landlord or Tenant or commencing ninety (90) days before the expiration of the Term, place a "For Rent" sign upon the Dwelling Unit and Premises and exhibit the Dwelling Unit and Premises to prospective tenants. All such entries into the Dwelling Unit and Premises shall be conducted at reasonable times and with reasonable notice to Tenant and shall be done in such a way as not to unreasonably disturb Tenant.

b.     Landlord shall give written notice to Tenant no less than 48 hours prior to an application of an insecticide or pesticide in the Dwelling Unit. If Tenant requests the application of the insecticide or pesticide, no prior notice is required.

c.     If Tenant refuses to allow or prevents access to Landlord as provided herein, Landlord may obtain injunctive relief to compel access or may terminate this Lease. In either case, Landlord may recover actual damages sustained and reasonable attorney's fees.

d.     Tenant shall give Landlord notice of any anticipated extended absence of Tenant from the Dwelling Unit in excess of seven (7) days. During such absence of Tenant, Landlord may enter the Dwelling Unit at times reasonably necessary to protect the Dwelling Unit. If Tenant fails to give such notice, Landlord may recover from Tenant any actual damages sustained, and shall have all other rights provided in the VRLTA. If Landlord cannot determine whether Tenant has abandoned the Dwelling Unit, Landlord may serve written notice on Tenant requiring Tenant to give Landlord written notice within seven days that Tenant intends to remain in occupancy of the Dwelling Unit. If by the end of such seven-day period Landlord has not received such notice or has otherwise determined that Tenant has abandoned the Dwelling Unit, the Dwelling Unit shall be presumed abandoned and this Lease shall be terminated as of such date.

In the event there is a non-emergency property condition, including a mold condition that requires Tenant to temporarily vacate the Dwelling Unit to make the necessary repairs, in the sole determination of Landlord, the Landlord may upon no less than thirty (30) days prior written notice to Tenant, require the Tenant to temporarily vacate the Dwelling Unit at no expense or cost to Tenant for a period of not more than thirty (30) days, to a comparable dwelling unit selected by Landlord, or at Landlord's option to a hotel room. Tenant shall continue to be responsible for all Rent due under the Lease without abatement, and shall comply with all other terms and conditions of the Lease during any period of temporary relocation. If the Landlord properly remedies the non-emergency property condition, or the mold condition in accordance with professional standards (as defined in Section 55-248.4 of the VRLTA), within the thirty (30) day period, the Tenant shall have no right to terminate the Lease as a result of such condition.

**VAR FORM 200  REV. 07/14**                    *PAGE 7 OF 14*

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

*instanet forms*

10. **LANDLORD'S INABILITY TO DELIVER POSSESSION TO TENANT.** If Landlord is unable to deliver possession of the Dwelling Unit to Tenant on the Commencement Date of this Lease through no fault of Landlord, Landlord shall not be liable to Tenant for any damages other than to rebate any Rent paid by Tenant for such portion of the Term during which the Dwelling Unit is not delivered to Tenant. If Landlord cannot deliver possession of the Dwelling Unit or provide Tenant with an alternative residential dwelling unit acceptable to Tenant within fifteen (15) days after the Commencement Date of the Lease, the Lease may be terminated by either Landlord or Tenant by giving notice to the other as provided herein.

11. **CASUALTY DAMAGE.** If the Dwelling Unit is damaged by fire or other casualty, by the failure of or malfunction of any equipment or utilities serving the Dwelling Unit, Tenant shall promptly notify Landlord. If, in the sole determination of Landlord, such damage does not render the Dwelling Unit substantially impaired or require repairs requiring Tenant to vacate the Dwelling Unit, Landlord shall repair the same within a reasonable period of time after service upon Landlord of written notice of such damage by Tenant, and Rent shall not abate during the period of such repairs. If the Dwelling Unit or any part thereof is damaged by fire or other casualty to such an extent that use of the *Dwelling Unit is substantially impaired, or required repairs can be made only by Tenant vacating the Dwelling Unit,* in the sole determination of Landlord, either Landlord or Tenant shall have the right to terminate the Lease in accordance with the terms of Section 55-248.24 of the VRLTA. Landlord shall account to Tenant for the Security Deposit and prepaid rent, as applicable, plus accrued interest on the Security Deposit (if any) based upon the damage or casualty. However, if Landlord reasonably believes that Tenant, Tenant's guests, invitees or authorized occupants were the cause of the damage or casualty, Landlord shall so notify Tenant and make disposition of the Security Deposit and prepaid rent by advising Tenant that such funds will be held until a determination is made of the amount of damages caused by Tenant's acts. Landlord shall have the right to apply the Security Deposit and prepaid rent to the damage so caused by Tenant, Tenant's guests, invitees, or authorized occupants. Except as otherwise provided herein, Tenant and Landlord do hereby otherwise release each other from any and all liability, loss, damage or claim resulting from any casualty and agree to secure from their insurers acknowledgment of such release and a waiver of any rights of subrogation.

12. **CONDEMNATION.** If all, or a substantial part, of the Dwelling Unit or Premises shall be acquired for any public use by the right of eminent domain, or private purchase in lieu of such right, by a public body vested with the power of eminent domain, this Lease and all rights of Tenant under it shall immediately terminate. The rent shall be adjusted as of the time of such acquisition, but Tenant shall have no claim against Landlord for any value of the unexpired Term, *nor shall Tenant be entitled to any part of the condemnation award or purchase in lieu of such award.*

13. **LIABILITY OF LANDLORD/AGENT.** Landlord and Managing Agent shall only be liable to Tenant(s) for damages proximately caused by Landlord's breach of Section 55-248.13 of the VRTLA or a specific provision of this Lease. Landlord and Managing Agent shall not be liable for negligence or tort. Landlord and Managing Agent shall also not have any liability of any kind whatsoever for any of the following: failure of utilities or services; acts of God; and any injuries or damages to persons or property either caused by or resulting from fire, falling plaster, dampness, overflow, or leakage upon or into the Dwelling Unit or the Premises of water, rain, snow, ice, sewage, steam, gas, or electricity, or by any breakage in or malfunction of pipes, plumbing, fixtures, air conditioners, or appliances, or leakage, breakage, or obstruction of soil pipes, nor for any injury or damage from any other cause. Tenant acknowledges that any security measures provided by Landlord or Agent will not be treated by Tenant as a further assurance or guarantee against crime or of a reduction in the risk of crime. Neither Landlord nor Agent will be liable to Tenant or any guest, invitee, or occupant for injury, damage or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. Neither Landlord nor Agent will furnish security personnel, security lighting, security gates or fences, or other forms of security. If the employees of Landlord or Agent are requested to render services not contemplated in this Lease, Tenant will hold Landlord and Agent harmless from any and all liability for same. If information on Tenant's rental history is requested by others for law enforcement or business purposes, Landlord may provide same in accordance with the "Tenant Consent Form." Landlord and Agent, in addition, shall not be liable under any circumstances of Tenant's failure to provide Landlord or Agent with prompt notice of any such conditions existing in the Dwelling Unit or Premises. Tenant hereby releases Landlord and Agent from any and all liability and agrees to indemnify Landlord and Agent for such losses, with respect to Tenant, and all authorized occupants and guests or invitees of Tenant.

14. **PETS.** No pets of any kind will be allowed to be kept or maintained on the Dwelling Unit without Landlord's prior written consent and the execution of an addendum entitled "Pet Addendum." Landlord reserves the right, however, to prohibit pets, except for qualified service animals, completely from the Dwelling Unit and Premises. Any unauthorized pet(s) in the Dwelling Unit shall constitute a breach of this Lease, and Tenant must pay the Unauthorized Pet Fee listed in section 1(c), if any, along with any other applicable Pet Rent, Fees and Deposit.

15. **REPRESENTATIONS IN APPLICATION FOR LEASE.** This Lease has been entered into in reliance on the

**VAR FORM 200   REV. 07/14**                     *PAGE 8 OF 14*

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the
Central Virginia Regional MLS.



information given by Tenant on Tenant's "Application for Lease", which by this reference is made a part of this Lease. Tenant shall advise Landlord or Agent in writing of any changes to the information contained in the application. If any of Tenant's material representations are found to be misleading, incorrect, untrue or omitted, Landlord may immediately terminate this Lease and require Tenant to vacate the Dwelling Unit.

16. **FINANCIAL RESPONSIBILITY.** If Landlord is required to make any payment to Tenant hereunder, Tenant agrees that such financial obligation will be satisfied solely from Landlord's estate and interest in the Dwelling Unit and the real estate upon which the Dwelling Unit is situated and the improvements of which it is part, or the proceeds thereof, *so that Landlord will incur no individual or other liability for such financial obligations.*

17. **NOTICE.** All notices shall be in accordance with Section 55-248.6 of the VRLTA, which provides for written notice to be given by regular mail or by hand delivery, with the party giving notice retaining a certificate of mailing, or delivery of the notice, as the case may be. Notice to the Landlord will be given to the Agent's Office or to such other place as may be specified by Landlord or Agent. Notice to Tenant will be given to the address of the Dwelling Unit. Landlord reserves the right for Landlord and Tenant to send notices in electronic form; however, if Tenant so requests, Tenant may elect to send and receive notices in paper form. If electronic delivery is used, the sender shall retain sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service prepared by the sender confirming the electronic delivery. Landlord will send all electronic notices to the e-mail address provided by Tenant in the Rental Application, and Tenant is required to provide notice to Landlord of any change in e-mail address.

18. **MILITARY.**
   a.   Any Tenant who is a member of the armed forces of the United States or a member of the Virginia National Guard serving on fulltime duty or a Civil Service technician with a National Guard unit may, through the procedure detailed in subsection (b) of this section, terminate this Lease if the Tenant (i) has received permanent change of station orders to depart thirty-five miles or more (radius) from the location of the Premises; (ii) has received temporary duty orders in excess of three months' duration to depart thirty-five miles (radius) from the location of the Premises; (iii) is discharged or released from active duty with the armed forces of the United States or from full-time duty or technician status with the Virginia National Guard; or (iv) is ordered to report to government-supplied quarters resulting in the forfeiture of basic allowance for quarters.

   b.   If Tenant qualifies to terminate this Lease pursuant to subsection (a) of this section, and in accordance with Section 55-248.21:1 of the VRLTA, Tenant may do so by serving on Landlord a written notice of termination at least thirty (30) days prior to the next Rent due date. The termination date shall be no more than sixty (60) days prior to the date of departure necessary to comply with the official orders or any supplemental instructions for interim training or duty prior to the transfer. Prior to the termination date, Tenant shall furnish Landlord with a copy of the official notification of the orders or a signed letter, confirming the orders, from Tenant's commanding officer.

   c.   Nothing in this section shall limit the amount of the Security Deposit that Landlord may retain as provided in section 3 of this Lease.

   d.   Landlord reserves the right to require, as a condition of this Lease, that Tenant execute a waiver of all or part of the rights the Tenant may otherwise have under the Servicemembers Civil Relief Act.

   e.   If no waiver of rights under the Servicemembers Civil Relief Act is required by Landlord, in the event of a nonpayment of rent by Tenant, Landlord reserves the right to request an allotment from the pay of the servicemember tenant as permitted in the Servicemembers Civil Relief Act.

19. **CANCELLATION; RENEWAL.**
   a.   Either party may terminate this Lease in accordance with section 1(j) of this Lease.   If notice of termination is not timely given, the Term of this Lease shall be extended upon the same terms and conditions as set forth in this Lease, for the term specified in section 1(j) until either party gives timely notice to terminate in accordance herewith, unless this Lease is terminated in accordance with any other applicable provision of this Lease or Virginia law; provided, however, that if the duration of the renewal term as set forth herein is less than the number of days specified in section 1(j) to terminate this Lease, then the notice period for terminating any renewal term of this Lease shall be the same period as the renewal term.

   b.   If Landlord intends to change the terms or conditions of this Lease, including increasing the Rent, for any renewal term thereafter, Landlord shall give Tenant written notice in accordance with section 1(j) of this Lease, advising Tenant of the new terms and conditions of a renewal lease. Should Tenant fail to provide Landlord timely written notice of Tenant's intentions to terminate the Lease in accordance with the preceding subsection (a), Tenant shall be deemed to have agreed to the terms and conditions set forth in Landlord's renewal notice, and shall be bound for such, until such time as the Lease is terminated in accordance with

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



this section.

c.   Any Tenant who is a victim of (i) family abuse as defined by § 16.1-228, (ii) sexual abuse as defined by § 18.2-67.10, or (iii) other criminal sexual assault under Article 7 (§ 18.2-61 et seq.) of Chapter 4 of Title 18.2 may terminate the Lease in accordance with the provisions of Section 55-248.21:2 of the VRLTA.

d.   Upon termination of this Lease, Tenant shall surrender the Dwelling Unit in good condition, with the exception of reasonable wear and tear and must pay for all damages or assessments for damages made by Landlord against Tenant in accordance with the Damage Addendum, other provisions of this Lease, or as Landlord reasonably determines.

20. **ACTION BY LANDLORD UPON DEFAULT BY TENANT.** Under Virginia law and this Lease, Landlord may terminate this tenancy during the term of the Lease upon one of the following:

a.   <u>Material Noncompliance by Tenant Failing to Pay Rent When Due.</u> If Tenant fails to pay Rent when due or pays Rent with a bad check, and such failure continues after Landlord has served a five-day notice of material noncompliance for failure to pay Rent, Tenant shall be in default, and Landlord may terminate this Lease and Tenant's right to possession in accordance with law and seek such damages as are appropriate under this Lease and the VRLTA.

b.   <u>Material Noncompliance by Tenant Which Can Be Remedied Within 21 Days.</u> If Tenant fails to comply materially with any other provision of this Lease, Landlord may serve on Tenant a material noncompliance notice stating that if Tenant does not remedy the specified noncompliance(s) within twenty-one (21) days after receipt of such notice, then if such noncompliance is remediable, this Lease will terminate thirty (30) days after Landlord has served such notice.

c.   <u>Repeat Violations.</u> If Tenant has been served with a prior written notice that required Tenant to remedy a breach, and Tenant remedied such breach, if Tenant intentionally has committed a subsequent breach of a like nature as the prior breach, Landlord may serve on Tenant a thirty (30) day termination notice for such repeat violation. Such notice must make reference to the prior breach of a like nature and state that the Lease will terminate in thirty (30) days for the reasons stated therein without allowing Tenant an opportunity to remedy such subsequent breach.

d.   <u>*Nonremediable Violations/Criminal Acts.*</u>  *If Tenant commits a material noncompliance that is not* remediable, Landlord may serve on Tenant a termination notice stating that this Lease will terminate in thirty (30) days for the reasons stated therein without allowing Tenant an opportunity to remedy such breach. If a breach of Tenant obligations under Virginia law or this Lease involves or constitutes a criminal or willful act that is not remediable and that poses a threat to health or safety, Landlord may terminate this Lease immediately by giving of written notice thereof. Tenant and any other persons in or about the Dwelling Unit with consent of Tenant, including but not limited to members of the family, guests, invitees or authorized occupants, shall not engage in criminal activities or activities intended to facilitate criminal activities including any illegal drug-related activity on the Dwelling Unit and any area of the Premises, including common areas and streets, involving a controlled substance (as defined in Section 54.1-3401 of the Virginia Code). "Illegal drug-related activity" means the illegal manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute or use of a controlled substance. Neither Tenant, guests, invitees or authorized occupants of Tenant will engage in the manufacture, sale or distribution of illegal drugs at any location, whether on the Premises or otherwise. Neither Tenant, guests or invitees or authorized occupants of Tenant will engage in acts of violence or threats of violence, including, but not limited to the unlawful discharge of firearms in the Dwelling Unit or on or near the Premises. A single violation of any of these provisions shall constitute a non-remediable violation of the Lease and justification for termination thereof. Criminal conviction is not required in order for Landlord to terminate this Lease. Nothing herein shall be construed to limit any remedies available under Virginia law for any criminal offenses committed by Tenant, guests, invitees or authorized occupants of Tenant.

e.   <u>Material Noncompliance by Tenant Which Can Be Remedied by Repairs, Cleaning or Replacement.</u> If Tenant commits a material noncompliance that can be remedied by repair, cleaning or replacement, Landlord shall deliver written notice to Tenant specifying the breach and stating that Landlord will enter the Dwelling Unit and perform the work. Once the work is complete, Landlord will deliver an itemized bill to Tenant for the work, and such amounts are due as rent on the next rent due date, or if this Lease is terminated, immediate payment is due.

f.   <u>Remedies Available to Landlord Upon Termination of Lease.</u>  In the event of a breach of the Lease or noncompliance by Tenant, Landlord shall be entitled to recover from Tenant the following, regardless of whether or not a lawsuit is filed or an order obtained from a court, amounts as contracted for in the Lease including: (i) rent due and owing (as of the court date if a lawsuit is pending), (ii) other charges and fees, (iii) late charges, (iv) reasonable attorney's fees in accordance with Section 26 of this Lease, unless in a court action the Tenant proved by a preponderance of the evidence that Tenant's failure to pay rent or vacate was reasonable, (v) costs of the proceeding as provided by law if a court action has been filed, and (vi) damages

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the
Central Virginia Regional MLS.



to the Dwelling Unit or premises.

g.   Family abuse.  If a Tenant is a victim of family abuse as defined in the VRLTA, and the perpetrator is barred from the Dwelling Unit pursuant to Section 55-248.31:01 of the VRLTA based upon information provided by Tenant to Landlord, or by a protective order issued by a court of competent jurisdiction, Landlord may not terminate this Lease due solely by an act of family abuse against a Tenant. However, the provisions of the preceding sentence shall not apply if: (i) Tenant fails to provide Landlord, not later than twenty-one (21) days after the alleged offense, with written documentation corroborating Tenant's status as a victim of family abuse and the exclusion of the perpetrator from the Dwelling Unit and the Premises; or (ii) the perpetrator returns to the Dwelling Unit in violation of the bar notice, and Tenant fails to so notify Landlord with 24 hours, subject to the provisions of the VRLTA.

21.  **ACCEPTANCE OF RENT WITH RESERVATION.**  If Tenant is in default under this Lease, Landlord may accept rent with reservation upon providing Tenant written notice of such acceptance in a termination notice, or within five (5) business days of receipt of rent, and such acceptance of periodic rental payments with knowledge of a material non-compliance by the Tenant will not constitute a waiver of Landlord's right to terminate the Lease.  If Landlord has given Tenant written notice that the periodic rental payments have been accepted with reservation, Landlord may accept full payment of all rental payments, damages and other fees and still be entitled to receive an order of possession terminating the Lease as provided in Section 55-248.34:1 of the VRLTA.  Any rental payment received after judgment and possession has been granted to Landlord against Tenant, but prior to eviction, will be accepted with reservation and will be applied to the judgment amount, including the late charges, applicable costs and attorney's fees, but will not affect the pending eviction pursuant to the order of possession granted by a court of competent jurisdiction, in accordance with the requirements of Section 55-248.34:1 of the VRLTA.  Further, the acceptance of the said amount with reservation in no way creates a new landlord/tenant relationship with Tenant.

22.  **NO WAIVER.**  If Landlord waives a noncompliance or breach of the Lease or law by Tenant, such waiver shall not be construed as a waiver of any subsequent breach of noncompliance or breach, and this Lease shall continue in full force and effect.

23.  **SUBORDINATION.**  Tenant agrees that this Lease is subordinate to the lien of any existing or future deeds of trust or mortgages placed on the Dwelling Unit and Premises, and Tenant agrees to execute whatever additional agreements may be required to so subordinate this Lease.  Landlord reserves the right to assign any of Landlord's rights under this Lease at any time.

24.  **SEVERABILITY.**  If any provisions of this Lease are violative of law or equity, the remaining provisions shall remain in full force and effect.

25.  **DISCRIMINATION.**  Landlord and Agent shall not discriminate against Tenant in the provisions of services or in any other manner on the basis of race, color, creed, religion, sex, national origin, familial status, elderliness, or handicap.

26.  **REASONABLE ATTORNEY'S FEES/COSTS OF COLLECTION.**  If as a result of Tenant's noncompliance with, or a breach of this Lease or the law Landlord employs an attorney at law, regardless of whether a lawsuit is filed, Tenant agrees to pay Landlord's reasonable attorney's fees and costs in all courts of competent jurisdiction at all tribunal levels, as well as any and all costs recoverable under Virginia law.

27.  **RULES AND REGULATIONS.**  Tenant shall abide by any rules and regulations adopted by Landlord applicable to the Dwelling Unit and the Premises, including any and all updated, and any rules of any property or homeowner, or similar association in which the Dwelling Unit is located.

28.  **HOLDOVER TENANT.**  If Tenant remains in possession of the Dwelling Unit after the required departure date following the termination of this Lease, Tenant will be liable for the following damages sustained by Landlord, or Agent:  (i) its actual damages which include but not are limited to, holdover rent equal to the Per Diem Rent set forth in section 1(c) multiplied by the number of days Tenant stays in possession of the Dwelling Unit after the vacating date, and storage, hotel, meals, mileage, etc., payable to the new tenant; (ii) liquidated damages equal to one-hundred and fifty percent (150%) (or one-hundred percent (100%) for any HUD property) of the Per Diem Rent, multiplied by the number of days Tenant stays in possession of the Dwelling Unit after the vacating date; and (iii) reasonable attorney's fees and court costs.  In addition, if Tenant remains in the Dwelling Unit after termination or expiration of the Lease and no new Lease is entered into, the terms of the Lease shall remain in effect, except that the amount of rent shall be either as provided in the terminated Lease, or as provided by Landlord in a written notice to Tenant.  Such new rent amount shall take effect on the next rent due date following thirty (30) days after the notice.  Nothing herein shall be deemed to create a right on the part of Tenant to holdover after the required departure date.

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



29. **MODIFICATION, APPLICABLE LAW AND SUCCESSORS.** This Lease and any and all addenda, exhibits or amendments hereto constitutes the entire agreement among the parties, and it may not be modified or amended except by written instrument executed by Landlord and Tenant. This Lease shall be construed, interpreted and applied according to Virginia law and it shall be binding upon and inure to the benefit of the heirs, personal representatives, successors, assignees, and subtenants of the parties.

30. **STATUTORY NOTICE TO TENANT.** Tenant shall exercise whatever due diligence Tenant deems necessary with respect to information concerning sex offenders registered under Chapter 23 (sec 19.2-387 et seq.) of Title 19. Such information may be obtained by contacting the local police department or the Department of State Police, Central Records exchange at (804) 674-2000 or www.vsp.va.state.us.

31. **BANKRUPTCY.** Subject to the requirements of the Bankruptcy Code, in the event the Tenant is adjudicated as bankrupt, (or makes an assignment for the benefit of creditors), this Lease, at the option of the Landlord, shall terminate upon thirty (30) days written notice and the Dwelling Unit shall be surrendered to the Landlord, who reserves the right to repossess the Dwelling Unit subject to the applicable provisions of law.

32. **OTHER SPECIFIC PROVISIONS:**
```
Tenant can pay rent by check, M/O, Cashier's check, or bill pay
through there written out to the owners, Lavaniel & Afrikka
Ennis and either mailed or dropped off at RVA Rental Properties,
1231 Alverser Drive, Midlothian, VA 23113. Rent is due on the
1st and considered late if not at RVA Rental Properties by the
5th of the month. Tenant to call the property manager at 869-
9311 or email at rentals@rvahomes.com with any issues pertaining
to the home. Tenant is to abide by the rules and regulations of
the home owners association, if the owner's are fined because
the tenants did not abide by the HOA rules and regulations the
tenants will be responsible for paying the fine.
```

There is a home warranty on the home, home owner will pay 1st
then trade fees then tenant will pay after that

33. **OPTIONAL PROVISIONS (to be initialed by Tenant if checked):**

☐ **LEAD-BASED PAINT.** The Premises were constructed prior to 1978, and housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not maintained properly. Lead exposure is especially harmful to young children and pregnant women. The Lead Based Paint Disclosure and EPA information book "Protect Your Family from Lead in Your Home" are attached hereto and made a part hereof, which shall be acknowledged by Tenant prior to occupancy of the Dwelling Unit.
Tenant _____    Tenant _____    Tenant _____    Tenant _____

☐ **DEFECTIVE DRYWALL.** *Tenant recognizes and acknowledges that prior to execution of this Lease,* Tenant has received a written disclosure that the Dwelling Unit contains "defective drywall," as defined in Section 36-156.1 of the Code of Virginia.
Tenant _____    Tenant _____    Tenant _____    Tenant _____

☐ **ASBESTOS.** Landlord hereby discloses any information known by Landlord regarding the location and condition of asbestos actually known to exist in the Dwelling Unit.
_____

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



Tenant may not disturb in any manner any areas noted above.

Tenant _____    Tenant _____    Tenant _____    Tenant _____

☐    **TRANSFER OF TENANT.** In addition to the rights set forth in section 18, any Tenant has the right to terminate this Lease if transferred fifty (50) miles or more (radius) from the Premises by the employer stated on the Rental Application. The termination shall be effective on the last day of the second calendar month following the month in which the Landlord receives the notice of termination. The Tenant shall provide a copy of the Tenant's transfer letter and/or orders, the final month's rent and the following termination or cancellation fee: (1) one month's rent if the Tenant has completed fewer than six (6) months of the tenancy as of the effective date of termination; or (2) one-half (½) of one month's rent if the Tenant has completed six (6) months or more of the tenancy as of the effective date of termination.

Tenant _____    Tenant _____    Tenant _____    Tenant _____

☐    **DIPLOMATS.** This Lease is void if the Tenant is the head of a diplomatic mission or a member of the diplomatic staff of a mission, or a family member of a diplomatic staff of a mission, or administrative and technical staff or their family which entitled them to the diplomatic immunity accorded to such persons under the Vienna Convention on Diplomatic Relations **unless** the diplomatic immunity accorded by law has been waived in writing by an authorized representative of the sending government. Tenant represents to the Landlord that he/she is such a person.

Tenant _____    Tenant _____    Tenant _____    Tenant _____

34.    **AGENCY RELATIONSHIP.** Landlord hereby ☒ does OR ☐ does not appoint Agent as its managing agent, with full and complete authority to engage in all aspects of the business of the management of the Dwelling Unit, and to act for Landlord in all respects which relate to this Lease. In consideration of Agent's procuring Tenant as a tenant in the Dwelling Unit and the negotiation of this Lease, Landlord agrees to pay Agent a procuring fee of __$99.00_____, which fee shall be separate from any management fee paid to Agent. This fee is earned when this Lease is executed, and is payable on all Rent during the original term, any renewals, extensions, expansions, replacements, relocations, or new leasings between Landlord and Tenant or its successors and assigns. No sale of the Dwelling Unit or the Premises shall release Landlord or its successor or assigns from the obligations set forth herein. Agent shall have the right to collect all Rent due hereunder so that its fees and commissions may be paid in installments as the Rent is received and retained by Agent before remitting the Rent (less such fees or commissions) to Landlord; but if any act be done to deprive Agent of its right to collect the Rent, then the entire amount of its fees and commissions earned but then unpaid shall, at Agent's option, become immediately due and payable. In addition to this fee or any other fee payable to Agent hereunder, Landlord agrees to pay Agent a sales fee equal to __n/a_____ if the Dwelling Unit or the Premises is sold during the Term of this Lease or any renewals or extensions thereof or within one-hundred twenty (120) days after the termination of this Lease to Tenant or to any entity affiliated with, controlled by or under joint ownership or control with Tenant or any of its owners or principals. This provision does not grant Tenant any right to purchase the Dwelling Unit or the Premises, nor does it authorize Agent to offer such property for sale. In the event Agent receives a mortgage default, foreclosure or similar notice from any lender affecting the Dwelling Unit or Premises, Agent shall deliver such notice to Tenant, unless such notice was delivered by Tenant to Agent.

35.    **WAIVER OF HOMESTEAD EXEMPTION.** Tenant expressly waives the benefit of the homestead exemption laws of the Commonwealth of Virginia.

36.    **ELECTRONIC SIGNATURES.**
_____ / _____ **If this Section is initialed by both parties, then in accordance with the Uniform Electronic Transactions Act (UETA) and the Electronic Signatures in Global and National Commerce Act, or E-Sign, regarding electronic signatures and transactions, the parties do hereby expressly authorize and agree to the use of electronic signatures as an additional method of signing and/or initialing this Lease Agreement. The parties hereby agree that either party may sign electronically by utilizing an electronic signature service.**

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

Instan*et forms

IN WITNESS WHEREOF, the parties have executed this Lease:

LANDLORD (or duly authorized agent)

_____ , 7/29/14        _____ , 7/29/14
Name Lavaniel Ennis              Date        Name Afrikka Ennis            Date

TENANT(S)

_____ , 7/29/14        _____ , _____
Name Kavleena Webb               Date        Name                          Date

_____ , _____        _____ , _____
Name                             Date        Name                          Date

LANDLORD'S BROKER

_____ , 7/29/14
Name RVA Rental Properties, LLC   Date

TENANT'S AGENT

_____ , _____
Name                             Date

COPYRIGHT©2014 by the Virginia Association of REALTORS®. All rights reserved. This form may be used only by members in good standing of the Virginia Association of REALTORS®. The reproduction of this form, in whole or in part, or in the use of the name "Virginia Association of REALTORS®", in connection with any other form, is prohibited without prior written consent of the Virginia Association of REALTORS®.

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.





Lease Extension Agreement

This lease extension agreement created on May 19, 2016 Between LaVaniel & Afrikka Ennis(hereinafter the LESSOR), and Kevleena Webb (hereinafter the LESSEE), for the property Located at 7118 West Road, Chesterfield, VA 23832.

The agreement certifies that the parties agree to extend the lease agreement for an additional time period of one year starting August 1, 2016.

This lease will be extended at a rate of $448 a month beginning August 1, 2016 with the lease ending July 31 , 2017.

This document binds the Lessor and the Lessee to the terms and conditions of the original lease. This lease extension agreement, along with the attached original lease, is the entire agreement between both parties.

Lessor

Signature: _____     Date 5/19/2016 _____
Afrikka Ennis

Signature: _____     Date 5/19/2016 _____
LaVaniel Ennis

Lessee

Signature: _____     Date: 5/19/2016 _____
Kevleena Webb



Lease Extension Agreement

This lease extension agreement created on May 21, 2015 Between LaVaniel & Afrikka Ennis(hereinafter the LESSOR), and Kavleena Webb (hereinafter the LESSEE), for the property Located at 7118 West Road, Chesterfield, VA 23832.

The agreement certifies that the parties agree to extend the lease agreement for an additional time period of one year starting July 31, 2015.

This lease will be extended at a rate of $421 a month beginning August 1, 2015 with the lease ending July 31, 2016.

This document binds the Lessor and the Lessee to the terms and conditions of the original lease. This lease extension agreement, along with the attached original lease, is the entire agreement between both parties.

Lessor

Signature: _____ Date  5/25/2015
       Afrikka Ennis

Signature: _____ Date 5/25/2015
       LaVaniel Ennis


Lessee

Signature: _____ Date: 7-7-2015
       Kavleena Webb







































